# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HARDY, | ) | CASE NO. 1:08-CV-0161 |
| | ) | |
| Petitioner, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MAGGIE BEIGHTLER, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Christopher Hardy ("Hardy"), challenges the constitutionality of his conviction in the case of *State v. Hardy*, Cuyahoga County Court of Common Pleas Case No. CR-429576. Hardy, represented by counsel, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on January 18, 2008. On May 7, 2008, Warden Maggie Beightler ("Respondent") filed her Answer/Return of Writ. (Doc. No. 6.) Hardy filed a Traverse on June 6, 2008. (Doc. No. 7.) The Court heard oral arguments on March 10, 2009. Subsequent briefing was submitted by both parties. (Doc. Nos. 16 & 17.) For reasons set forth in detail below, it is recommended that Hardy's petition be GRANTED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6ᵗʰ Cir. 2002).[1]  The state appellate

court summarized the facts underlying Hardy's conviction as follows:

> [*P2]  In October 2002, defendant was indicted pursuant to a seven-count
> indictment that charged him with rape, kidnapping, abduction, felonious assault,
> and domestic violence, all in connection with alleged attacks upon his estranged
> wife in April 2002.  Defendant was eventually convicted of one count of rape, one
> count of kidnapping and domestic violence.  This Court reversed and remanded
> for a new trial, however, because the trial court responded to jury questions
> outside of defendant's presence.  *See State v. Hardy,* Cuyahoga App. No. 82620,
> 2004 Ohio 56.[2]  This Court found many of defendant's remaining assignments of
> error moot, but addressed those assignments of error which raised issues "which,
> if proved, would require entry of judgment in [defendant's] favor."  This Court
> then considered defendant's contentions that the indictment contained
> multiplicitous counts of rape and kidnapping which were undifferentiated and
> which implicated "his right not to be tried twice for the same offense."  In
> rejecting these assignments of error, this Court noted that the prosecutor had in
> fact differentiated the two rape charges, and that the "prosecutor also
> distinguished the two kidnaping charges, associating each of them with the
> separate incidents of rape."
>
> [*P3]  Upon retrial before a jury, the state's evidence demonstrated that defendant
> and Mrs. Hardy met while working at the Metzenbaum Center and were married
> in October 2001.  By 2002, the marriage had become acrimonious.  In March
> 2002, defendant and Mrs. Hardy argued and she decided to leave.  Mrs. Hardy

---

[1]  Though Hardy has completed his prison sentence stemming from this conviction, he
remains subject to that portion of his sentence mandating five years of post-release
control.  Respondent has not raised any challenge to Hardy's petition based on the "in
custody" requirement, which encompasses more than actual physical custody.  *See
Maleng v. Cook*, 490 U.S. 488, 491 (1989).  A person released on his own recognizance
bond is considered to be in custody, *Malinovsky v. Court of Common Pleas*, 7 F.3d 1263,
1265 (6ᵗʰ Cir. 1993), as is a parolee, *Rosales-Garcia v. Holland*, 322 F.3d 386, 394-95
(6ᵗʰ Cir. 2003) (*en banc*); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6ᵗʰ
Cir. 1993).

[2]  Specifically, the indictment charged Hardy with two counts of rape, two counts of
kidnapping, one count of abduction, one count of felonious assault, and one count of
domestic violence.  *See State v. Hardy*, 2004-Ohio-56 at ¶2, 2004 Ohio App. LEXIS 43
(Ohio Ct. App. Jan. 8, 2004) At the close of the state's case, the trial court granted
Hardy's motion for a directed verdict with respect to the charge of felonious assault.  *Id.*
at ¶9.

testified that her car was blocked in the driveway so she called her sister to pick her up.  Defendant called the police who remained at the scene while Mrs. Hardy removed some of her belongings from the home.

[*P4]  Mrs. Hardy moved from the residence, but defendant wanted to reconcile. Mrs. Hardy acknowledged that she spent a few nights at the home, but had no intention of moving back in or of reconciling. According to this witness, she continued contact with him in order to obtain the rest of her property, which included bedroom furniture and jewelry.

[*P5]  On April 5, 2002, Mrs Hardy and defendant spoke and she went to his home in South Euclid. Defendant left to pick up his daughter and granddaughter and Mrs. Hardy went to a tanning salon. She then took the girls to the grocery store and bought items for dinner, as well as wine and beer. After they ate dinner, Mrs. Hardy took a bath. The girls then watched television in another room while defendant and Mrs. Hardy watched television in defendant's bedroom.

[*P6]  According to the witness, defendant pressured her for sex, and she "gave in" because he has a bad temper.  Later, defendant began to argue with her over her friendship with a female coworker.  Mrs. Hardy started to leave and defendant pulled her back on the bed and began to speak abusively to her.  He then inserted three fingers into her vagina, and pulled her across the bed and ripped off her T shirt.  For approximately one hour, he refused to let her leave the bed as he continued to degrade her and refused to let her have her clothing.

[*P7]  After defendant calmed down, she went to the kitchen and got a glass of milk. Defendant then threw the milk at her and ordered her out. As Mrs. Hardy got into her car to go, defendant jumped on the hood of the car and pulled on the door handle, breaking both the rear view mirror and the driver's side window.

[*P8]  After Mrs. Hardy left the home, defendant contacted South Euclid police to notify them that the woman had returned to his home to get clothes, and that she had been drinking and taking medication. He also stated that he had not touched her or harmed her in any way.

[*P9]  The woman testified that she then drove to her home in Geauga County. She tried to call a friend then took a shower and went to bed.  The next morning, she called a hotline for help, then went to the sheriff's department and to the hospital. Medical records demonstrated that the woman had injuries to her breast, arm, and thigh, and photographs depicted damage to her car.

[*P10]  South Euclid police went to defendant's home to speak with him in connection with their investigation of the matter.  According to Det. Ardonetto, defendant raised his fists and was combative, so the officers handcuffed him and

took him to the police station.  After receiving Miranda warnings, defendant made an oral statement and also made a written statement.  Later, after obtaining a bond and being released, he returned to the station and made a second written statement.  In his statement, defendant indicated that Mrs. Hardy had initiated sexual relations and that he was unable to have intercourse due to an injury.

[*P11]  Defendant elected to present evidence and testified that, during their marriage, Mrs. Hardy learned that he has significant assets, including certificates of deposit and stock.  He further indicated that Mrs. Hardy was able to take all of her possessions from the home in the presence of police so she had no real concern about any remaining property.

[*P12]  According to defendant, Mrs. Hardy wanted to reconcile and, on the night of April 5, 2002, although he had plans to be with his daughter and granddaughter, the woman arrived and behaved romantically.  She took a bath then changed into a t-shirt, and asked him to lay with her on the bed.  He had been injured so he could not have intercourse, despite the woman's attempts.  She then asked him to penetrate her digitally.  Ultimately, according to defendant, the woman became angry, and left, saying, "I'll fix you.  You rejected me."

[*P13]  Defendant denied raping the woman or harming her and he denied damaging her car.  He believed that the woman's allegations were part of a scheme to get at his assets.  He stated that he contacted police after she left simply to notify them that the woman was drinking and driving.

[*P14]  Defendant also presented the testimony of various co-workers and former co-workers who testified that he is truthful and nonviolent.  Defendant's granddaughter also testified and stated that she did not hear any fighting or arguing.

[*P15]  Following deliberations, the jury could not reach a verdict as to the rape charge and the trial court declared a mistrial as to this count.  Defendant was convicted of kidnapping, however, and sentenced to three years of imprisonment.  He now appeals and assigns twelve errors for our review.

*State v. Hardy*, 2007 Ohio App. LEXIS 1085, 2007-Ohio-1159 at ¶¶2-15 (Ohio Ct. App. Mar.

15, 2007).

## II.  Procedural History

### A.    Conviction

On October 28, 2002, the Cuyahoga County Grand Jury charged Hardy with two

identically worded counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02, two identically worded counts of kidnapping in violation of O.R.C. § 2905.01, one count of abduction in violation of O.R.C. § 2905.02, one count of felonious assault in violation of O.R.C. § 2903.11, and one count of domestic violence in violation of O.R.C. § 2915.25.  (Doc. No. 6, Exh. 3.)  No Bill of Particulars was filed.  All of the charges stemmed from a continuous course of conduct on April 5, 2002.  Hardy was found guilty of domestic violence, one count of rape, and one count of kidnapping.  (Doc. No. 6, Exh. 4.)  He was acquitted of the remaining charges. *Id.*

Upon direct appeal, Hardy prevailed on his eighth assignment of error, which alleged that the trial court erred by responding to jury questions outside his presence.  *Hardy*, 2004-Ohio-56 at ¶17.  The state appellate court remanded the case for a new trial.

On April 6, 2005, the trial court granted Hardy's motion to dismiss the domestic violence charge based on Ohio's speedy trial statute.  (Tr. 70-71.)

On April 14, 2005, after retrial, a jury found Hardy guilty of kidnapping, but was deadlocked as to the rape.  (Doc. No. 6, Exh. 5.)  The court declared a mistrial on the latter charge.  *Id.*  On June 13, 2005, the trial court sentenced Hardy to a term of three years in prison and five years of mandatory post-release control.  (Doc. No. 6, Exh. 6.)  Hardy was also ordered to pay court costs and a fine of three-thousand ($3000) dollars.  *Id.*

**B.  Direct Appeal**

On July 15, 2005, Hardy, through counsel Paul Mancino, Jr., filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). (Doc. No. 6, Exh. 16.)

On March 15, 2007, the state appellate court affirmed Hardy's conviction.  (Doc. No. 6, Exh. 21.)  On March 26, 2007, Hardy filed an application for reconsideration, a motion for rehearing *en banc*, and a motion for certification of conflict.  (Doc. No. 6, Exhs. 22-24.)  On April 4, 2007, the state appellate court denied the application and both motions.  (Doc. No. 6, Exh. 25.)

On May 14, 2007, Hardy filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 6, Exh. 26.)  On September 26, 2007, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 6, Exh. 29.)

## C.  Federal Habeas Petition

On January 18, 2008, Hardy filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: Fifth Amendment

Supporting Facts: Petitioner was been denied his right not to be placed twice in jeopardy where he was retried on identical counts of an indictment on which counts he had previously been found not guilty.

GROUND TWO: Fourth and Fourteenth Amendment

Supporting Facts: Petitioner was denied due process of law when he was arrested in his own home without a warrant.  As a result of his arrest evidence was taken from his home and also a statement was obtained from petitioner in violation of his constitutional rights.

GROUND THREE: Fourteenth Amendment

Supporting Facts: Petitioner was denied due process of law when the prosecutor offered inconsistent positions when the prosecutor presented the same evidence at petitioner's retrial.  In addition, the court improperly allowed petitioner's wife to testify with the reference to the offense of kidnapping as she was an incompetent witness.

GROUND FOUR: Sixth Amendment

Supporting Facts: Petitioner was denied his constitutional right of compulsory process when the court refused to enforce a properly served subpoena for a defense witness.  Moreover the court refused to allow petitioner to present a defense when the court would not allow the divorce decree into evidence which was an issue of importance at trial.

GROUND FIVE: Sixth and Fourteenth Amendment

Supporting Facts: Petitioner was denied his right of confrontation and cross-examination when the court admitted medical records of the alleged victim. Moreover the court allowed an investigating detective to relate conversations with other persons and express his opinions concerning the existence of probable cause.

GROUND SIX: Fourteenth Amendment

Supporting Facts: Petitioner was denied due process of law and a fair trial where evidence of other bad acts was offered and which evidence was bolstered by statement and conduct by the prosecuting attorney.

GROUND SEVEN: Sixth and Fourteenth Amendment

Supporting Facts: Petitioner was denied due process of law when the court failed to limit the application of the statutory definition of sexual conduct with reference to the kidnapping count of the indictment, the offense for which petitioner was found guilty.  Moreover, the jury was informed that testimony given by petitioner was to be given different consideration from that of other witnesses.

GROUND EIGHT: Fourteenth Amendment

Supporting Facts: Petitioner was denied due process of law when his motion for judgment of acquittal was overruled as there was insufficient evidence to permit a rational factfinder to return a verdict of guilty.

(Doc. No. 1.)

### III.  Review on the Merits[3]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

---

[3]  Respondent concedes that all of Hardy's claims are exhausted.  (Doc. No. 6 at 10-12.)

-7-

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal

-8-

district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.     Ground One: Double Jeopardy**

Hardy alleges that he was denied his right not to be placed twice in jeopardy when the evidence introduced at his retrial was identical to that introduced at his first trial where he was acquitted of one count of rape, one count of kidnapping, and abduction.  (Doc. No. 1.) Specifically, Hardy argues that since it is unclear which kidnapping charge he was convicted of at his first trial, his conviction of kidnapping at his second trial violated the double jeopardy clause because it may have been based upon conduct of which he was previously acquitted. (Doc. No. 7 at 2-6.)

After Hardy's second conviction, the state appellate court found that his due process/defective indictment claim had been decided in his prior appeal and, therefore, considered that ruling the law of the case.  *Hardy*, 2007-Ohio-1159 at ¶25.  Hardy argued that his kidnapping conviction violated his right against double jeopardy because it was based upon previously acquitted conduct.  *Id.*  The court concluded Hardy had constitutionally sufficient *notice* of the charges against him at the second trial as required by *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005).  Relying upon the argument of the State at trial, the court went on to hold the

rape charge was consistently delineated at both trials and found no double jeopardy violation. However, the court did little more than mention the kidnapping conviction and never addressed the issue of whether it was secured by reliance upon acquitted conduct from the first trial. *Id.* at ¶¶26-35. Because the merits of Hardy's double jeopardy/collateral estoppel claim went unaddressed, this Court conducts a *de novo* review. *See, e.g., Mickens v. Moore*, 2008 U.S. Dist. LEXIS 29156 (S.D. Ohio Apr. 9, 2008), *citing Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005) ("when a claim has not been 'adjudicated on the merits in State court proceedings,' and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA"); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Phillips v. Bradshaw*, 2006 U.S. Dist. LEXIS 75885 (N.D. Ohio 2006).

The Respondent has consistently maintained, and both state appellate court decisions ruled, that the prosecution's delineation of the factual bases for each charge during argument at trial was constitutionally sufficient for due process considerations. The state appellate court relied on *dicta* from the Sixth Circuit's decision in *Valentine*, where the Court observed that the due process problems in a "carbon-copy" indictment "might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during trial." 395 F.3d at 634. This Court, however, need not reach the question of whether the prosecution's argument alone was constitutionally sufficient to differentiate the charges at the first trial. As explained below, the State improperly used evidence of acquitted conduct from the first trial to secure Hardy's kidnapping conviction at the second trial – evidence that was barred by the double jeopardy clause.

It is firmly established that "the double jeopardy prohibition of the Fifth Amendment

-10-

represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  Also included in the constitutional prohibition against double jeopardy is the doctrine of collateral estoppel.  *See generally Ashe v. Swenson*, 397 U.S. 436 (1970).  The *Ashe* court explained that collateral estoppel "stands for an extremely important principle in our adversary system of justice ... that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id*. at 443 (noting that the principle of collateral estoppel had been an established rule of federal criminal law for at least fifty years).  Thus, the *Ashe* court found that a defendant, who had been acquitted of armed robbery of a poker player, could not be subsequently tried for robbing another player at that same game.  *Id*.  The Court reasoned that since there was a reasonable doubt that the defendant had been one of the robbers, another trial would be precluded by collateral estoppel.  *Id*.  Since a subsequent trial for robbing a second victim was prohibited, *Ashe* protects against prosecution for another offense that requires proof of a fact found in favor of an accused in a prior proceeding.  "[T]he burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990).

At the first trial, the State differentiated between the identically worded charges of rape and

-11-

kidnapping by assigning portions of the evidence to each charge.  As this Court understands the

State's theory and argument at the first trial, Hardy was charged with one count of rape based on

the allegation that he engaged in non-consensual sexual intercourse with the complaining

witness.  The first kidnapping charge corresponded to the first rape charge.  At his first trial,

Hardy was acquitted of both.  As to the identically worded second count of rape, the alleged

conduct was non-consensual digital penetration of the complaining witness's vagina.  The

second kidnapping charge corresponded to the second rape charge.  Hardy was convicted of

both.  Hardy also was charged with abduction at his first trial.  According to the first state

appellate court opinion and consistent with the prosecution's closing argument, the conduct

supporting this charge was the allegation that Hardy "prevented [the alleged victim] from

leaving the bedroom, pulled off her shirt, and verbally assaulted her."  *Hardy*, 2004-Ohio-56 at

¶22; (*see also* First Trial Tr. 548-549.)[4]  He was acquitted of abduction.  Finally, Hardy was

convicted of domestic violence at his first trial, but that charge was dismissed prior to the second

trial on the grounds that Ohio's speedy trial statute had been violated.  In relevant part, at the

first trial, the prosecution laid out its theory of the case during closing arguments as follows:

> Each count in the indictment constitutes a separate and distinct crime.  And as
> such, they are deserving of your independent and individual deliberation.

> And so with that in mind, I find it incumbent upon myself to, at this moment, to
> go through the indictment and indicate to you the State's theory of each count and
> then indicate to you the evidence that supports each count in order for you to
> return the appropriate verdict.

---

[4]  Both trials also contained testimony that Hardy allegedly jumped on top of the
complaining witness's car, breaking her driver's side window and rearview mirror, in an
attempt to keep her from leaving.  It is unclear if these events were also a part of the
abduction charge.

In count number one and in count number two the defendant is charged with rape. And the allegation is that he engaged in sexual conduct with Susan Hardy by purposely compelling her to submit by the use of force or threat of force.

Count number one, the theory is that while the victim was inside of the apartment of the defendant and seated at the edge of his bed, he approached her, pushed her back and engaged in vaginal intercourse with her against her will.  Her testimony was that she told him she didn't want to, she said no and that essentially she submitted because she knew what would happen if she resisted.

And in count number two, the elements are the same but the theory is that the defendant raped the victim when he inserted three fingers into her vagina and did so without her consent, against her will and by force or threat of force.

And so those are the two separate and distinct acts that we are alleging constitute the crime of rape.

***

In terms of counts three and four, they mirror count one and two to a certain extent.  Count number three and count number four the charge is the same and it's kidnapping.  And the allegation is that by force, the defendant – there's a lot of legal language You'll get the jury instructions that the Court will read to you at the end.

But pertinent to this case and our theory, the allegation is that the defendant, by force, restrained her of her liberty for the purpose of terrorizing her or engaging in sexual activity.

***

In Ohio, if you restrain someone of their liberty for the purpose of engaging in sexual activity, it is a crime.  And that's what our theory is in count numbers three and four.

He restrained her when he had sexual intercourse with her, vaginal intercourse, and he restrained her of her liberty when he inserted his three fingers into her vagina.

Count number five is abduction.  And here we get into a little bit of a different theory and different forms of evidence.

Abduction alleges that the defendant, without privilege to do so, knowingly, by force or threat, restrained Susan Hardy of her liberty under circumstances which

-13-

created a risk of physical harm or placed her in fear.

Recall her testimony, ladies and gentlemen, *after* the defendant had assaulted her through vaginal intercourse and the digital penetration of her vagina, she wanted to leave and she testified how she tried to get out of the bedroom and then out of the apartment.  And he kept grabbing her, pulling at her, pulled her shirt off, pushing her back into the bedroom and then continued the verbal assault, if you will, on her, degrading her, demeaning her, pointing out different portions of her anatomy.

***

Lastly, we have the charge of domestic violence, which alleges that the defendant did cause or attempt to cause physical harm to a family or household member. They were married, separated and living apart.  The judge will define for you what a family member is and what a household member is.

Clearly under the definition that you're going to get, she's a family member or household member.  And then you need to ask yourselves, did he knowingly cause or attempt to cause physical harm to her?

We'll talk at length about these photographs, ladies and gentlemen, but they clearly show physical harm.  State's Exhibit 1 through 7.

State's Exhibit 1 shows a bruise of the forearm of the victim.  State's Exhibit 2 is a different photograph, different view of the same injury.  There's a bruise on her biceps.  State's 3 and 4 show the bruise on the other arm.  This would be the right arm.

***

Moving on.  State's Exhibit 5 shows a bruise on the outer thigh of the victim's leg.  State's 6 and 7 show the bruise on the inside of her leg.  Recall her testimony as to how these were inflicted upon her and when.

(First Trial Tr. 543-565.)

The above argument of the prosecution constitutes the only differentiation of the charges

that occurred at the first trial and the only guidance the jury received.  Prior to trial, no Bill of

Particulars was filed.  At no time during the first trial did the court give instructions to the jury

regarding what portions of the evidence should be considered as the conduct underlying specific

-14-

charges.[5]  The Court will, therefore, compare the above argument in the State's first closing to that given at the second trial.

To withstand the double jeopardy challenge, the State, must, at a minimum, be consistent between trials when it argues the relevant conduct underlying the kidnapping charge that resulted in the ultimate conviction.  That is not to say that the State is prohibited from putting on a stronger case the second time – they simply cannot strengthen it by relying upon previously acquitted conduct.  Because Hardy was acquitted of the first counts of rape and kidnapping, as well as the abduction charge, at his first trial, the conduct underlying those charges could not be used as direct evidence to sustain his kidnapping conviction at the second trial.  After reviewing the transcript from both trials, it is clear that the same testimony was admitted at the second trial as at the first. This included the testimony of the complaining witness, on direct examination, concerning alleged actions which formed the basis of the acquitted charges.  The trial court offered no limiting instruction concerning this testimony.  (Tr. 360-416; 462-530.)  During the trial court's jury instructions, the jurors were merely given a standard definition of kidnapping.  (Tr. 1010-1012.)  The instructions also clearly indicated that the jury could consider any witness testimony or exhibits admitted at trial.  (Tr. 1013).  At no point was the jury instructed that it could not consider the alleged actions of Hardy that supported the previously acquitted charges.  In fact, at the Oral Hearing before this Court, Respondent essentially conceded that the acquitted

---

[5]  It bears noting that during jury deliberations at Hardy's first trial, the jury submitted the following questions to the trial judge: (1) "What act of the defendant is considered to be kidnaping in Count #3?"; and (2) "What act of the defendant is considered to be kidnaping in Count #4?"  (Doc. No. 13.)  Thus, it is clear the jurors were confused.  The trial judge's answer merely referred the jurors to the jury instructions and instructed them to use their collective memory of the evidence presented.  *Id*.

conduct underlying the abduction charge, while perhaps admissible for limited purposes, could not be considered by the jury to satisfy an element of the kidnapping charge.  (Oral Hearing Tr. 21-22.)

It is Respondent's position that the prosecution's argument in opening and closing statements clearly delineated the kidnapping charge at issue at the second trial and that the jury, therefore, understood "which specific series of events they were to consider when deliberating." (Doc. No. 16 at 4.)  The Court disagrees.  At the second trial, the prosecution specifically called the jurors' attention to conduct which resulted in acquittals while arguing that Hardy was guilty of kidnapping.  During its argument, the prosecution directed the jury to evidence concerning the acquitted rape, kidnapping, and abduction charges:

| | |
|---|---|
| ***Prosecution***: | State's Exhibits 6 and 7 are bruises on the inner right thigh, scrapes, abrasions of some sort....  I wonder, ladies and gentleman, could this injury be inflicted as he's trying to pry open her legs -- |
| ***Defense Counsel***: | Objection. |
| ***Prosecution***: | – when he was having vaginal intercourse with her, when they were having sex before?  Remember, her legs were hanging over the bed and she said, No, I don't want to do this.  Please stop.  And they had sex anyways. |
| | I wonder if that's how this injury could have occurred, where he's using his legs and his knees to pry open her legs. |
| ***Defense Counsel***: | Objection. |
| ***Trial Court***: | Overruled. |

(Tr. 942-43; *see also* Tr. 284.)  Though the prosecution clarified during closing argument that "the rape in this case is the Defendant thrusting his three fingers into her vagina" and not the

-16-

sexual intercourse," no such clarification was offered regarding the kidnapping charge.  (Tr. 946;

963.)  The greatest confusion and presentation of overlapping evidence occurred with respect to

the acquitted abduction claim.  In its closing argument of the second trial, the prosecution

identified the following conduct as relevant to the kidnapping charge:

> It's at this point in time, ladies and gentlemen, that the Defendant commits the
> crimes that we're here asking you to consider. While in the bedroom in this
> argument, the Defendant begins to push and shove her and verbally and
> physically assault her.
>
> At some point during this altercation while she's sitting on the bed, he pushes her
> on her back on the bed and then inserts the three fingers of his right hand into her
> vagina and begins to pull her around or pull her forward on the bed as she's trying
> to escape. He's using his fingers in that manner (indicating) to try to pull her
> towards him. And all the time is he talking to her about how she is going to obey
> him or she's going to do what he wants her to do.
>
> After she's able to get away from this, at that point he begins to verbally and
> physically abuse her further. She wants to leave the room and he starts pushing
> her against the wall. He starts grabbing her by her arms, both arms, with his
> fingers in the manner where his thumb is on her inner muscle, the bicep, and he
> begins pushing against her into the wall.
>
> At some point in time I think she has admitted she is permitted to go to the
> kitchen and obtain a glass of milk.  She goes back into the bedroom with the idea
> she's going to get dressed and leave.  He begins his verbal assault on her again.
> He uses phrases where he says things like, you have moose tits.  Who is going to
> want to be with you.  You are a fat bitch that no one is going to want. If you leave
> me, who is going to be with you.  Your stomach hangs over your pussy.  Nobody
> is going to want to be with you if you leave me.
>
> As she begins to leave, at that point in time, the Defendant grabs her breast and
> begins pulling on it and squeezing it to the point where when she went to the
> hospital that bruise is noted in the medical records.  You'll have the nurse coming
> in here to testify as to all of the bruises on Susan Dent's body when she reported
> to the hospital the next day.
>
> After another short brief period of time, Ms. Dent is able to put on her clothing
> and attempt to leave the residence, but it doesn't end there.  As she gets to her car,
> the Defendant follows her out into the driveway.  And as she gets in the car, her
> window, it being April, was down somewhat, and as she tries to raise the window

-17-

> or close her door, he forces the window or, pardon me, forces his arm and hand into the window in an attempt to block her from getting out, take the keys, grab the steering wheel, something.
>
> During the course of that series of events, her driver's side rearview mirror is cracked, not to the point where it falls off, but it's cracked and shattered.  Yes, ladies and gentlemen, we have photographs showing the window as it was partially opened by the Defendant and the rearview mirror cracked because she went to the police the next day.  Also, the testimony from Ms. Dent will be that in order to prevent her from leaving, he actually jumped up onto the hood of the car and was trying to stop her in that fashion, but as she began to move, he kind of slid down off of the car and she was able to then just go.

(Tr. 285-88.)  It is unclear where the charged kidnapping conduct ends and the acquitted abduction conduct begins.  Respondent concedes that some of the conduct, quoted above, described incidents unrelated to the kidnapping charge and formed the basis of the acquitted abduction charge.  (Doc. No. 16 at 3.)  However, at no point in the above quoted argument, or at any point thereafter, did the prosecution, or the trial court, indicate that it was describing conduct that the jury could not consider as evidence of the kidnapping charge.  In addition, the prosecution also asked the jury to rely on photographs which were used to secure the domestic violence conviction at the first trial – a charge thrown out before the second trial began.  (Tr. 941-42.)[6]

During the first trial, it was the prosecution's theory that the second kidnapping count – the only conviction obtained at the second trial – related to the events during the second alleged rape which involved the digital penetration.  (First Trial Tr. 544-46.)  Comparing the prosecution's

---

[6] Though the photographs may have been admissible for other purposes, the prosecution made no attempt to link the injuries depicted therein to the conduct underlying the charged rape and corresponding kidnapping. The prosecution actually speculated that the thigh bruises may have occurred during the first alleged rape of which Hardy had been acquitted.  Again, there was no limiting instruction concerning the use of the photographs.

-18-

theory at the first trial to its theory at the second trial, it is clear that the latter included events and/or actions allegedly occurring *after* the second alleged rape and corresponding kidnapping had ended.  Thus, there is an impermissible overlap where the prosecution argued acquitted conduct underlying the abduction charge to secure Hardy's ultimate kidnapping conviction.

Although Hardy was not being retried on the abduction charge, the State clearly asked the jury to consider the facts associated with that charge at the first trial to bolster the likelihood of a kidnapping conviction at the second trial.  Perhaps the State might have established all the elements of kidnapping without considering the acquitted conduct, but it did not attempt to do so.  Instead, from the onset of the second trial, the prosecution invited the jury to consider evidence of acquitted conduct that was barred by the doctrine of collateral estoppel.  During closing arguments, the prosecution asked the jury to consider the "overall set of circumstances." (Tr. 963.)  Consequently, Hardy has satisfied his burden of showing that the jury, when acquitting him of abduction at the first trial, necessarily found there was a reasonable doubt as to whether he restrained his wife of her liberty, by force or threat, during the events occurring after the second alleged rape.  As such, relitigation of the issue was foreclosed at his retrial.

The scenario before the Court is more akin to the Supreme Court's decision in *Ashe* than *Dowling*.[7]  The *Dowling* court found evidence stemming from an unrelated prior acquittal was not barred by the doctrine of collateral estoppel because, "unlike the situation in *Ashe v.*

---

[7] In *Dowling*, the defendant was charged with robbery after entering a bank wearing a ski mask and wielding a small handgun.  493 U.S. 342.  The Court ruled that collateral estoppel did not bar testimony that the defendant, despite having been acquitted in a separate trial, had broken into a home two weeks after the bank robbery wearing a mask, armed with a small handgun, and accompanied by a person who was believed to be the get-away car driver at the bank robbery.  *Id.*

-19-

*Swenson*, the prior acquittal did not determine an ultimate issue in the present case." *Dowling*, 493 U.S. at 348 (declining to extend the "collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances ... relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted").  The *Dowling* court also emphasized that the trial court, after the jury heard the disputed testimony, advised the jury that the testimony was only being offered for limited identification purposes and that Dowling had been acquitted of the burglary, attempted robbery, and assault charges.  493 U.S. at 346.  The admonition was also reiterated in the jury charge.  *Id.*  The evidence relied upon by the prosecution at Hardy's second trial did not stem from an unrelated acquittal and was not admitted for a limited purpose under the rules of evidence.  Rather, the prosecution specifically relied upon conduct underlying the abduction charge at the second trial.  Because the first jury found that there was a reasonable doubt as to whether Hardy restrained his wife through force or threat of force after the second alleged rape, the prosecution could not use this same conduct to show that Hardy was guilty of kidnapping.[8]

Furthermore, considering and comparing the prosecution's arguments, this error cannot be construed as harmless.  *See O'Neal v. McAninch*, 513 U.S. 432 (1995) ("When a federal habeas court finds a constitutional trial error and is in grave doubt about whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict,' the error is not harmless, and the petitioner must win...")  Respondent argues that Hardy cannot demonstrate that

---

[8]  This case did not involve an allegation that the alleged victim was removed from the place where she was found or that deception was employed to restrain her.  As such, a finding that the victim was restrained of her liberty by force or threat is an essential element to secure either an abduction or kidnapping conviction.  *See* O.R.C. §§ 2905.01 and 2905.02.

the jury's verdict actually involved conduct of which he had been previously acquitted. (Doc. No. 16 at 4.) Again, the Court disagrees. It is undisputed that evidence of acquitted conduct was clearly presented to the jury. The jury received no instruction from the Court limiting its use. To the contrary, it was instructed that it should consider all witness testimony and exhibits as evidence. Lastly, the prosecution actively encouraged the consideration of acquitted conduct during its opening and closing statements. There is every reason to believe the jury considered this acquitted conduct when it found Hardy guilty of kidnapping.[9] Based upon the jury's failure to convict Hardy on the rape charge, it is highly unlikely that the same jury would have convicted him of kidnapping if limited only to the evidence of restraint associated directly with the rape allegation while not considering the conduct previously associated with the abduction charge at the first trial. Consideration of such evidence was barred by the doctrine of collateral estoppel contained within the Constitution's prohibition against double jeopardy.

Finally, even if this Court were to construe the state appellate court's opinion as having somehow addressed Hardy's collateral estoppel claim, thereby rendering *de novo* review inappropriate, the Court's recommendation would remain the same. Without any discussion of the record, the state appellate court concluded that, "at the retrial, the prosecuting attorney clearly indicated that he was proceeding only on the rape and kidnapping charges for which defendant had been previously convicted, and these were the offenses related to the digital penetration." *Hardy*, 2007-Ohio-1159 at ¶36. Based on this assumption, the court concluded

---

[9] To the extent Respondent contends that Hardy cannot demonstrate that the jury actually discussed and considered the acquitted conduct when arriving at its conclusion, the Court rejects such a burden, as it would be virtually insurmountable without access to interviews of the actual jurors. Moreover, Respondent has cited no law erecting such a daunting obstacle.

that Hardy's right against being placed twice in jeopardy for the same crime was not implicated. As the evidence and argument cited above illustrates, the court's position that the prosecution's delineation was consistent as to the kidnapping charge at both trials is untenable.  As such, the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented.

Therefore, as Hardy's sole conviction violated the prohibition against double jeopardy, his conviction should be vacated and he should be released from state custody.  Based on this recommendation, the remainder of Hardy's grounds for relief are rendered moot and will, therefore, not be addressed.

### IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Hardy's Petition be GRANTED, that Petitioner be RELEASED from custody, and that his conviction be VACATED.[10]

s/ Greg White
U.S. MAGISTRATE JUDGE

Date: May 27, 2009

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[10]  Though Hardy has completed his prison sentence stemming from this conviction, he remains subject to that portion of his sentence mandating five years of post-release control.